Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner, with minor modifications and the addition of an attorney's fee on appeal under N.C. Gen. Stat. § 97-88. as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the deputy commissioner as
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the plaintiff and defendant at the times in question.
3. The carrier liable on the risk is correctly named above.
4. The employee's average weekly wage is $367.43 per week as calculated from the wage chart. The parties stipulated at the hearing that the Commission would recalculate the wage chart to determine the proper figures.
5. The defendants admit plaintiff sustained an injury on or about August 30, 1996.
6. The defendants admit the injury arose out of and in the course of employment and is compensable.
7. Various medical records and other documents have been stipulated into evidence with the Pre-Hearing Agreement.
8. Issues for decision include:
a. Average weekly wage and compensation rate.
b. Whether plaintiff is entitled to further compensation from January 13, 1997.
c. Whether treatment by Dr. Geissele is related to the injury and should be approved.
***********
Based upon all the competent evidence in the record, the Full Commission adopts the findings of fact of the deputy commissioner with minor modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff worked as a sock boarder for defendant for 21 1/2 years. That job involves repetitive use of the hands and frequent bending.
2. On August 30, 1996, plaintiff sustained an admittedly compensable back injury when she jerked socks that were stuck off a boarding machine and had the immediate onset of low back and left hip pain which progressively worsened.
3. Prior to the injury at work, Dr. Alfred Geissele had performed an October 1995 L4-sacrum spinal fusion after which plaintiff made excellent progress. She returned to work light duty "tearing down socks" in January 1996 and then returned to her regular job in April 1996. As of April 17, 1996, plaintiff had essentially no back pain.
4. After the August 30, 1996 injury, defendants authorized treatment by Dr. Geissele. Dr. Geissele is a board certified orthopaedic surgeon who concentrates in spinal disorders. Dr. Geissele began seeing employee again September 3, 1996 for the injury at work. Dr. Geissele diagnosed sacroiliac joint dysfunction which, as he testified, was either caused or aggravated by the injury at work. Treatment has included sacroiliac joint injections which defendants have refused to provide even though the injections provided some relief to plaintiff.
5. Plaintiff has been on a no work status by Dr. Geissele beginning October 2, 1996 and has not been released for work by Dr. Geissele.
6. On December 17, 1996, defendants sent plaintiff to Dr. David DuPuy in Charlotte. Dr. DuPuy's qualifications are unknown as defendants did not take Dr. DuPuy's deposition. Dr. DuPuy opined plaintiff could go back to work with limited bending and standing.
7. About January 13, 1997, defendant-employer offered plaintiff the same light duty job she had in 1996 "tearing down socks". That job requires a substantial amount of bending and stooping. Hilda Batten, the company nurse, testified that the company had planned to modify the job but admitted that plaintiff was never told of the proposed modifications. Further, as testified by Dr. Geissele, the job was not suitable for plaintiff. Neither is the job within the restrictions of Dr. DuPuy. Thus, plaintiff justifiably refused the job.
8. Plaintiff is not at maximum medical improvement and needs further treatment which may include radio frequency ablation or surgery. As of the last visit with Dr. Geissele, plaintiff was still having problems with daily life functions. Plaintiff was age sixty (60) as of the date of the hearing, has done sock boarding all her life, and completed the sixth (6th) grade of school.
9. Defendants stopped employee's compensation January 12, 1997 without seeking Industrial Commission approval.
10. This appeal to the Full Commission was brought by defendant-insurer. Since the Full Commission has affirmed the deputy commissioner decision to pay continuing benefits to the plaintiff, the costs of this proceeding may be taxed to defendant-insurer.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of the admittedly compensable August 30, 1996 injury by accident, employee developed sacroiliac joint dysfunction.
2. Treatment by Dr. Geissele has been appropriate and should continue as needed.
3. Employee continues to be unable to work and is entitled to temporary total compensation. G.S. § 97-29.
4. Defendants stopped compensation January 12, 1997 without Industrial Commission approval and should be sanctioned. G.S. §97-18.1.
5. The costs of this Full Commission appeal should be taxed to defendants.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Subject to counsel fee, defendants shall pay plaintiff temporary total disability compensation at the rate of $244.97 per week, beginning October 2, 1996 and continuing until further orders of the Commission. That part of the compensation which has accrued shall be paid in a lump sum and weekly thereafter. Defendants shall also pay such additional amounts as may be necessary to correct compensation on prior weeks of temporary total which were paid.
2. As a sanction against defendants for stopping compensation January 12, 1997 without Industrial Commission approval, defendants shall, in addition, pay an extra 10% penalty on the accrued compensation due plaintiff and an extra attorney fee of $500.00 to plaintiff's counsel.
3. An attorney fee for plaintiff's counsel of 25% of the compensation in Paragraph (1), including continuing compensation, is approved, and shall be deducted from said amount and paid directly by plaintiff's attorney as follows: 25% of the accrued compensation shall be deducted and paid directly to plaintiff's counsel, thereafter, plaintiff's counsel shall receive every fourth check.
4. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injury/disease, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or may tend to lessen the plaintiff's period of disability, when bills for same have been submitted and approved by the Industrial Commission. This shall include treatment provided or recommended by Dr. Geissele.
5. Defendants shall pay plaintiff's counsel an additional attorney's fee of $1,000.00 as part of costs for defending this appeal to the Full Commission.
6. Defendants shall pay the costs due this Commission.
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
BSB:md